## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ICEM S.P.A., | : | |
| AURORA ASSICURAZIONI S.P.A, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO.: 1:07-cv-10819-RCL |
| | : | |
| v. | : | |
| | : | |
| HARVEY INDUSTRIES, INC., | : | |
| RACHEL CASTRICONE, | : | |
| TRACEY BOULDOUKIAN | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS ICEM S.P.A. AND AURORA ASSICURAZIONI S.P.A'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO LIFT THE STAY OF DISCOVERY AS TO DEFENDANT RACHEL CASTRICONE ONLY

Plaintiffs ICEM S.P.A. ("ICEM") and Aurora Assicurazioni S.P.A. ("Aurora") hereby submit this Memorandum of Law in Support of its Motion to Lift the Stay of Discovery as to Defendant Rachel Castricone ("Castricone").

## Background

### I.      The Fire

This case arises out of a fire at the Hotel Parco dei Principi (the "Hotel") on May 1, 2004.  The fire originated in Room 305 of the Hotel (the "Fire"), which, at the time of the Fire, was occupied by Defendants Bouldoukian and Rachel Castricone ("Castricone").  Bouldoukian and Castricone were staying at the Hotel as guests of Defendant Harvey Industries, Inc. ("Harvey Industries").  Harvey Industries booked and paid for Room 305.

As a result of the Fire, the Hotel sustained serious property damage, loss of business, and other damage.  Three Hotel guests, James Lowry and Paul and Bernice Busque, also tragically died.

The Rome Fire Brigade investigated the Fire and determined that it was caused by the careless disposal of cigarettes in Room 305.  As a result, the Rome Public Prosecutor brought criminal charges against Castricone and Bouldoukian.  The charges against Bouldoukian were subsequently dismissed.

At all times relevant to this action, ICEM owned and operated the Hotel.  Aurora provided property and liability insurance for the Hotel.  Aurora insured ICEM, and indemnified ICEM for property damage, loss of business, and other damage under the terms of Aurora Policy No. N5850004106.   Aurora also settled, on behalf of ICEM, the wrongful death claims made by the Lowry and Busque estates.

## II.     Massachusetts Civil Litigation

On April 27, 2007, ICEM and Aurora filed this suit against Bouldoukian, Castricone, and Harvey Industries.

Subsequently, on November 19, 2007, Castricone filed a Motion to Stay Discovery as to Her, Due to Prior Pending Action (the "Stay").[1]  In support of the Stay, Castricone's counsel represented to the court that the criminal trial against her was "set for January 2008 in Rome, Italy."[2]  Based on Castricone's assertions in her motion and at oral argument that the criminal trial would proceed promptly in January 2008, this Court granted Castricone's Stay.[3]

---

[1] *See* Docket Report No. 31.
[2] *See* Castricone's Motion to Stay Discovery as to Her, Due to Prior Pending Action, pg. 1, a true and correct copy of which is attached hereto as Exhibit A.
[3] The November 20, 2008 Initial Scheduling Conference in which Castricone's counsel argued her motion was not recorded so no transcript is available.  *See* November 28, 2007 Docket Report Entry.

2

The Plaintiffs are advised, however, that the criminal proceedings in Italy did not commence against Castricone until four months later, on May 21, 2008.  The Plaintiffs further understand that the criminal trial is still in its early stages as the Italian criminal court only hears evidence on Castricone's case once a month.  As a result, it is the Plaintiffs' understanding that it will take the Italian criminal court at least two years, if not more, to come to a final resolution regarding Castricone's criminal liability for the Fire.

However, since the Stay was entered halting all discovery against her, Castricone has actively sought discovery from Aurora, ICEM, and Bouldoukian.  On January 23, 2008, Castricone served the Aurora and ICEM with its First Set of Interrogatories and its First Request for the Production of Documents.[4]  Aurora and ICEM thereafter timely provided their Responses and Objections to Castricone's RFPDs on April 4, 2008, and their Objections to Defendants First Set of Interrogatories on May 2, 2008.

Castricone has aggressively sought to take Bouldoukian's deposition.[5]  Specifically, Castricone has noticed Bouldoukian's deposition several times, including April 1, 2008, May 1, 2008, June 5, 2008, and June 30, 2008.[6]

On June 23, 2008, Bouldoukian filed a Motion to Stay Discovery as to Her, or, in the Alternative, a Motion for Protective Order.[7]  On June 25, 2008, Castricone filed an Opposition to Bouldoukian's motion.[8]  In her opposition, Castricone stated that she wanted to depose

---

[4] See Castricone's First Set of Interrogatories and First Request for the Production of Documents ("RFPDs"), true and correct copies of which are attached hereto as Exhibit B.
[5] See Castricone's Memorandum in Support of Her Motion for Sanctions Against Bouldoukian, pg. 2, a true and correct copy of which is attached hereto as Exhibit C.
[6] See Castricone's Memorandum in Support of Her Opposition to Defendant Tracey Bouldoukian's Motion to Stay Discovery as to Her, or in the Alternative, For Protective Order, pg. 2, a true and correct copy which is attached hereto as Exhibit D.
[7] See Docket Report No. 42.
[8] Id.

Bouldoukian to "assist in the present [civil] case in which Rachel Castricone is a defendant."[9] Castricone also asserted, however, that if Bouldoukian's deposition revealed information which was helpful to Castricone's criminal defense, she would share the testimony with her Italian defense attorneys.[10]  On June 30, 2008, neither Bouldoukian nor her attorney appeared for her scheduled deposition.  As a result, the deposition did not go forward.  On July 2, 2008, the Aurora and ICEM filed an Opposition to Bouldoukian's Motion to Stay Discovery as to Her, or, in the Alternative, a Motion for Protective Order.[11]

Subsequently, on July 3, 2008, Castricone filed a Motion for Sanctions Against Bouldoukian pursuant to Fed. R. Civ. P. 37(d), for Bouldoukian's "refusals and failures to appear for depositions without valid basis."[12]  Thereafter, on July 14, 2008, Bouldoukian filed a Motion in Objection to Castricone's Motion for Sanctions Against Bouldoukian.

In addition to seeking to take Bouldoukian's deposition, Castricone's counsel noticed and took the deposition of Matthew Fiderio, a key witness in the case, on March 24, 2008. Furthermore, Castricone's counsel has noticed the depositions of two hotel guests, Phil and Pauline Beaulieu, for August 4, 2008.  Thus, while Castricone has prevented all discovery as to her, she has vigorously pursued both testimonial and written discovery as to the Aurora, ICEM, and the other defendants.  Specifically, Castricone has served 20 interrogatories and 12 documents requests to Aurora and ICEM, scheduled Bouldoukian's deposition at least five times, taken one other deposition, and scheduled two more depositions for the first time.

---

[9] Id.
[10] Id.
[11] *See* Docket Report No. 47.
[12] *See* Docket Report No. 49.

**Argument**

The Court should lift the Stay of discovery against Castricone. Since this Court granted the Stay, significant information regarding the duration of the Italian criminal proceeding against Castricone has come to light. The parties now understand that Castricone's criminal trial in Italy will not be resolved for two years, *at a minimum.* Therefore, Castricone's Stay should be promptly lifted to prevent the further prejudice and additional expense to the parties from further delaying the expeditious resolution of this litigation.

**I.     Castricone's Criminal Trial's Protracted Delay is Grounds for Lifting the Stay**

It is patently unfair for Castricone to use the Stay as a shield to protect herself from discovery, while vigorously pursuing the "sword" of liberal discovery standards to bolster her defense in the civil and criminal cases. In fact, Castricone has admitted that she will seek to use information obtained during discovery in the civil litigation to "assist her defense" in the Italian criminal proceeding.[13] Accordingly, the Court should lift the Stay to prevent Castricone from actively exploiting the Stay to gain evidence for her own defense, while substantially prejudicing the Plaintiffs' ability to prepare its own case.

It is well-established that there is no constitutional right to stay a civil proceeding while a parallel criminal proceeding "is in the works."[14] The court has admittedly discretionary authority to stay proceedings for prudential reasons, and federal courts are empowered to enter protective orders, or other orders which limit discovery for a finite period of time or to a particular subject matter.[15] Courts, however, apply a balancing test to determine whether to stay

---

[13] *See* <u>Exhibit D</u>.
[14] *See* <u>Microfinancial, Inc. v. Premier Holidays Int'l, Inc.</u>, 385 F.3d 72, 77 (1st Cir. 2004).
[15] *See* <u>Digital Equipment Corp. v. Currie Enterprises</u>, 142 F.R.D. 8, 12 (D. Mass. 1991).

a civil case pending a criminal action.[16]  The pertinent interests include: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest.[17]

Analyzing each of these interests, and factoring in the unpredictable and unhurried nature of the Italian criminal proceedings, it is clear that maintaining the Stay substantially prejudices all the parties by unjustifiably delaying the speedy resolution of the civil litigation.  It was the parties' understanding, based on a representation by Castricone's counsel at the November 20, 2008 oral argument, that the criminal trial would be resolved in or about January 2008.  Plaintiffs never anticipated, nor were they ever informed by Castricone's counsel, that the criminal trial could take as long as two years, if not more.  If the Stay is maintained there is no question that the Plaintiffs' ability to pursue their claims against Castricone will be unreasonably prejudiced as time progresses, memories fade, and witnesses become unavailable.[18]

Plaintiffs have an overriding and judicially protected interest in efficiently proceeding with trial preparation, and especially discovery, which relies on personal memories.  *See* Int'l Floor Crafts, Inc. v. Adams, 529 F. Supp. 2d 174, 176 (D. Mass. 2007) (denying stay because plaintiff is entitled to an expeditious resolution of litigation that had been pending for two years); Microfinancial, 385 F.3d at 78 (stay denied because, among other reasons, over three years had elapsed since the occurrence which gave rise to the litigation and "memories become stale over time"); Austin v. Unarco Industries, Inc., 705 F.2d 1, 5 (1st Cir. 1983) (denying stay where

---

[16]  Id.
[17]  Id.
[18] "Defer no time, delays have dangerous ends."  Shakespeare, Henry VI, Act III, scene 2.

plaintiff would be required to endure "financial hardship of being forced to wait for an undefined but potentially lengthy period before receiving the money to which she may be entitled").

Rule 1 of the Federal Rules of Civil Procedure provides that the rules should be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Discovery is not a one way street and Castricone must not be allowed to assert the Italian criminal proceedings as an impenetrable roadblock.

## II.    Castricone Has No Fifth Amendment Right To Remain Silent While Her Italian Criminal Trial Is Pending

Most importantly, there is no threat that the civil litigation will violate Castricone's Fifth Amendment right to remain silent because the Self-Incrimination Clause does not apply to the Italian criminal action.  In U.S. v. Balsys, the United States Supreme Court held that the right to remain silent applies only to "prosecution by a sovereign that is itself bound" by the Fifth Amendment, and does not pertain to prosecution by foreign governments.[19]

In her Motion to Stay Discovery as to Her, Due to a Prior Pending Action, Castricone cited United States v. Kordel for the proposition that she is entitled to a Stay for the duration of her criminal trial.[20]  Kordel, however, is inapposite because Castricone's Fifth Amendment Rights would not be violated if the Stay was lifted, and the government is not a party to this litigation.  In dicta, the Kordel court hypothesized that a protective order or other remedy may be appropriate where the defendants faced a "'real and appreciable risk' of self-incrimination" in

---

[19] 524 U.S. 666, 689 (1998).
[20] 397 U.S. 1 (1970).

violation of the Fifth Amendment.[21]  The facts of the present litigation, however, are easily distinguishable from <u>Kordel's</u> hypothetical.

Accordingly, Castricone has no recognizable constitutional right to justify the stultification of the Plaintiffs' civil legal rights.  *See* <u>GLL GmbH & Co. Messeturm KG v. Lavecchia</u>, 247 F.R.D. 231, 233 (D. Me. 2008) (denying motion to stay discovery in United States civil fraud case where criminal case was pending in Germany).  Furthermore, the government is not a party to this civil litigation; neither is there any claim that the Plaintiffs bring this action as an "arm of the government" or for the purpose of obtaining evidence for a criminal prosecution.[22]  Taken together, the prejudice the parties, and particularly the Plaintiffs, will sustain in delaying discovery – potentially for years – overshadows any inconvenience to Castricone.

Finally, Castricone's interests in maintaining the Stay are also outweighed by the Court's and public's countervailing interests.   When applying the balancing test, the federal courts attribute "substantial weight" to the individual District Court's vital interest in managing its crowded dockets.[23]  It would be inefficient and unreasonable for this Court to rely on the leisurely pace of the Italian Court to control its docket.[24]  Furthermore, it is undeniable that the public generally has an interest in both the "prompt resolution of civil cases" and the "fair prosecution of criminal cases."[25]  However, the American public has little or no interest in

---

[21] <u>Id.</u> at 9.
[22] *See* <u>Arthurs v. Stern</u>, 560 F.2d 477, 479 (1st Cir. 1977); <u>Kordel</u>, 397 U.S. at 11-12.
[23] *See* <u>Microfinancial</u>, 385 F. 3d at 79.
[24] At the November 20, 2008 Initial Conference, this Court entered a Scheduling Order which, in part, was based upon the representations of Castricone's counsel that the criminal trial would promptly commence in January 2008. According to that Scheduling Order, all fact discovery must be completed in less than five months, on December 1, 2008.  However, eight months after the Court's Order, there has been no discovery as to Castricone.  Unless the Court lifts the Stay, the parties will not be able to meet the December 1, 2008 deadline.
[25] <u>Digital</u>, 142 F.R.D. at 14.

criminal matters in Italy, at least to the extent justifying an indefinite delay in a civil case pending in the United States.

## <u>Conclusion</u>

For the foregoing reasons, Plaintiffs ICEM S.P.A. and Aurora Assicurazioni S.P.A. respectfully request that this Court promptly lift the stay of discovery as to Defendant Rachel Castricone which was entered by this Court on November 28, 2007.

Respectfully submitted,
By their attorneys,

**ICEM S.P.A.,**
**AURORA ASSICURAZIONI S.P.A,**

**By their attorneys,**

/s/ Claire Newton_____
John E. Tener, BBO # 563791
John E. O'Brien, Jr., BBO #640982
Claire Newton, BBO # 669598
Attorneys for the Plaintiffs
ROBINSON & COLE LLP
One Boston Place
Boston, MA 02108-4404
Main (617) 557-5900
Fax (617) 557-5999
jtener@rc.com
jobrien@rc.com
cnewton@rc.com

Dated: July 16, 2008

## CERTIFICATE OF SERVICE

I, Claire Newton, hereby certify that this document filed through the ECF system will be

sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF) on July 16, 2008.

/s/ Claire Newton_____
Claire Newton