# EXHIBIT 32

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -x

ICEM S.P.A.

AURORA ASSICURAZIONI S.P.A.

    Plaintiff

V.                              Civil Action No.

HARVEY INDUSTRIES, INC.,   1:07-CV-10819 RCL

RACHEL CASTRICONE,

TRACEY BOULDOUKIAN

    Defendants

- - - - - - - - - - - - - - - -x


DEPOSITION OF ALI REZA

Friday, October 16, 2009

9:50 a.m.

Nutter McClennen & Fish, LLP

155 Seaport Boulevard

World Trade Center West

Boston, Massachusetts

- - - - - - - -

Reporter: Deborah Roth, RPR/CSR

```
 1                P-R-O-C-E-E-D-I-N-G-S
 2                     ALI REZA,
 3           having been satisfactorily
 4   identified by the production of his California
 5   driver's license, and duly sworn by the Notary
 6   Public, was examined and testified as follows:
 7                     EXAMINATION
 8      BY MR. BRAKE:
 9      Q.   Can you state your name for the record,
10   please.
11      A.   Ali, A-L-I, Reza, R-E-Z-A.
12      Q.   And you are employed at Exponent,
13   correct?
14      A.   Yes.
15      Q.   Can you tell us what your position is
16   at Exponent currently?
17      A.   I'm a principle engineer.  I'm also one
18   of the corporate officers.
19      Q.   And what corporate officer are you?
20      A.   My title is corporate vice president
21   and principal engineer.
22      Q.   Are you an owner of the company?
23      A.   It's a publically-traded company.
24      Q.   So I take it you do own some shares of
```

1    electrical, and the information in the
2    sequence of events portion of the analysis
3    provided information to determine that the
4    improper discarding of smoking-related
5    materials was a credible cause.
6         Q.  Okay.  With respect to your cause and
7    origin analysis that you performed in this
8    matter, did you follow NFPA 921?
9         A.  With respect to my origin and cause
10   analysis --
11        Q.  Oh, I'm sorry.
12        A.  -- my investigation was consistent with
13   the guidelines in 921.
14        Q.  Now, the -- I think it's most logical
15   to get the most done we can and get this done
16   if we take your origin and cause analysis
17   first.
18        A.  Okay.
19        Q.  I don't know if I'm right about that,
20   but that's the gamble I'm going to go with.
21             So it's fair to say then that you
22   determined ultimately that the fire at the
23   Parco dei Principi on May 1st, 2004 was caused
24   by improperly disposed of cigarette embers or

```
 1   cigarettes?
 2       A.   Ultimately, that is what I concluded.
 3       Q.   And in doing so, you obviously have
 4   excluded the possibility of an electrical
 5   cause of the fire?
 6       A.   Correct.
 7       Q.   And as you told us a few moments ago,
 8   you excluded an incendiary or purposeful cause
 9   of the fire?
10       A.   Correct.
11       Q.   Now, in your analysis, you used the
12   FDS, what's it called, Smokeview?
13            What's the system called, the FDS
14   system?
15            What's computer program called?
16       A.   FDS.
17       Q.   Okay.
18       A.   Would you like me to clarify what
19   Smokeview is and --
20       Q.   You know, you can if you want, but
21   we'll probably just waste a lot of time on it,
22   and it is what it is, right?
23            So, I mean, Smokeview is the thing
24   that let's you do the pretty graphics,
```

1  in this case; is that fair to say?

2  A.  One of items which I rely upon, the
3  reason I clarified my earlier response is the
4  Rome Fire Department conducted an
5  investigation in conjunction with the police
6  department, and their findings were provided
7  to the public prosecutor experts.

8  The Rome Fire Department did the
9  dig-out, they did -- they cleared certain
10 areas of the room, and they also conducted an
11 initial investigation of the electrical
12 causes.

13 Q.  Have you seen a writing associated with
14 the Rome Fire Department's work separate and
15 distinct from the compilation prepared by the
16 public prosecutor and the six experts?

17 A.  Yes, sir.

18 Q.  Okay.  The writers that you have seen
19 from the Rome Fire Department do not expressly
20 make mention of looking for arcing; is that
21 correct?

22 A.  That is correct.

23 Q.  Okay.  And you wanted to know, as part
24 of your analysis, you wanted to satisfy

1  was electrical in nature, wouldn't a careful
2  fire scientist in any country have to look for
3  evidence of arcing?
4      A.  Well, I already told you that I'm not
5  privy to the procedures for fire investigation
6  which apply in every country.
7      Q.  Okay.  Strike the question.
8          You would look for arcing?
9      A.  I would look for arcing, sure.
10     Q.  And you believe, as you sit here today,
11 that the Italian authorities looked for arcing
12 at the Parco dei Principi in Room 305 and
13 thereabouts, correct?
14     A.  Yes, sir.
15     Q.  And the basis you have for believing
16 that is what Mr. Vaccaroni told you about the
17 usual and customary practice in Italy; is that
18 fair to say?
19     A.  The basis I have first is a statement
20 by the Rome Fire Department that they found --
21 or they found no evidence that this was an
22 electrical fire.
23         Now the question became, what
24 evidence are they talking about, and I

1  actually asked Mr. Vaccaroni why aren't they
2  more specific, why didn't they just say it,
3  because I was frustrated. Why didn't they
4  just say they didn't find arcing?
5      And Mr. Vaccaroni indicated to me --
6  and it would have been from a pure
7  investigation perspective -- I wish the law in
8  Italy would have allowed me to talk to the
9  investigators, and we tried multiple times,
10 and there's apparently no way, according to
11 the Italian judicial system, that we can talk
12 to these investigators.
13     But what he told me is that in
14 Italy, if there is something which is not
15 present, contrary to U.S. procedures where we
16 recognize how critical arcing is, and
17 therefore make a point of indicating whether
18 or not there is an arcing event or not, in
19 Italy, fire departments typically will say, no
20 evidence of an electrical fire. That's...
21 Q.  Okay. So my question to you, and this
22 is the question you misunderstood.
23 A.  Okay.
24 Q.  My question to you is, first, you

1    A.    No, there is nothing in his deposition
2    on who made that call.
3    Q.    Okay.  I'm moving on now, sir, to
4    Page 2, and at the bottom of Page 2, the last
5    phrase is, "We have concluded that the fire
6    started due to carelessly discarded smoking
7    material in Room 305," correct?
8    A.    Yes.
9    Q.    And that is really the conclusion at
10   the beginning and at the end of your report?
11   A.    Yes.
12   Q.    Okay.  Who discarded the smoking
13   material, if you know?
14   A.    Right now, the only clear evidence that
15   I have where smoking materials might have been
16   discarded is when Ms. Castricone brought the
17   ashtray back into the room.  Mr. Fiderio has
18   indicated that he recalls that she might have
19   brought the ashtray back into the room, and he
20   does not recall that she had the ashtray in
21   her hand when he left the room.
22         If I accept that the smoldering
23   cigarette was discarded at that point, then it
24   would be Ms. Castricone.