## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

```
------------------------------------------------- x
ICEM S.P.A.,                                      :
AURORA ASSICURAZIONI S.P.A,                        :
                                                  :    CIVIL ACTION NO.: 1:07-cv-10819
            Plaintiffs,                           :
                                                  :
                                                  :
v.                                                :
                                                  :
                                                  :    Leave to file excess pages granted
HARVEY INDUSTRIES, INC.,                          :    January 20, 2010.
RACHEL CASTRICONE,                                 :
TRACEY BOULDOUKIAN                                 :
                                                  :
            Defendants.                           :
------------------------------------------------- x
```

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT CASTRICONE'S MOTION TO STRIKE OPINIONS
## <u>OF PLAINTIFF'S LIABILITY EXPERTS</u>

PLAINTIFFS,
ICEM S.P.A.,
AURORA ASSICURAZIONI S.P.A,
By their attorneys,

John E. Tener, BBO # 563791
Alexander D. Pencu (Admitted *pro hac vice*)
Thomas J. Donlon (Admitted *pro hac vice*)
ROBINSON & COLE LLP
One Boston Place
Boston, MA 02108-4404
Phone: (617) 557-5900
Fax: (617) 557-5999

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

ARGUMENT ................................................................................................... 2

I. DEFENDANT FAILED TO MEET HER BURDEN TO PROVE SPOLIATION
    OCCURRED ................................................................................................. 2

    A.    Castricone Failed to Prove Plaintiffs Destroyed Evidence ....................... 3

    B.    Plaintiffs Had No Duty To Preserve Evidence ........................................ 7

II. CASTRICONE FAILED TO MEET HER BURDEN TO PROVE UNFAIR
    PREJUDICE .............................................................................................. 11

    A.    No Prejudice Occurs When Parties Have A Level Playing Field ............. 11

    B.    No Prejudice Occurs When Moving Party Had Timely Prior Notice ......... 13

    C.    No Prejudice Occurs When Party Had No Independent Access To
        Evidence ...................................................................................... 15

    D. No Prejudice Occurs As Electrical Cause Can Be Excluded Based on Existing
        Evidence ...................................................................................... 18

CONCLUSION ............................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Akinyemi v. Napolitano*
  2009 U.S. App. LEXIS 18304, at *4-*5 (2d Cir. August 17, 2009) ..........................................3

*Allstate Ins. Co. v. Hamilton Beach/Proctor Silex*
  473 F.3d 450 (2d Cir. 2007) ...............................................................................................14

*Anderson v. Cryovac*
  862 F.2d 910 (1st Cir. 1988) ........................................................................................3, 4, 11

*Asher Assocs. v. Baker Hughes Oilfield Ops*
  2009 U.S. Dist. LEXIS 40136, at *16 (D. Col. May 12, 2009).................................8, 12, 13

*Bankston v. Wal-Mart*
  2008 U.S. Dist. LEXIS 11600 at *10-*11 (M.D. Ga. 2008) ...............................................13, 14

*Centimark v. Pegnato & Pegnato Roofing*
  2008 U.S. Dist. LEXIS 37057, at *26 (W.D. Pa. 2008)........................................................12

*Chambers v. Nasco*
  501 U.S. 32 (1991) ..............................................................................................................20

*Cia Petrolera Caribe v. Arco Caribbean*
  754 F.2d 404 (1st Cir. 1985) ..................................................................................................7

*Collazo-Santiago v. Toyota Motor*
  149 F.3d 23 (1st Cir. 1998) ..............................................................................................12, 15

*Corales v. Sea-Land*
  172 F.R.D. 10 (D.P.R. 1997) .................................................................................................19

*Driggin v. Am. Sec. Alarm*
  141 F.Supp.2d 113 (D. Me. 2000).........................................................................................5

*Gates Rubber Co. v. Brando Chemical Indus.*
  167 F.R.D. 90 (D. Colo. 1996) ......................................................................................3, 4, 11

*Gordner v. Dynetics*
  862 F.Supp. 1303 (M.D. Pa. 1994)........................................................................................4

*Headley v. Chrysler*
  141 F.R.D. 362 (D. Mass. 1991) .......................................................................................15, 16

*Hofer v. The Gap*
  516 F.Supp.2d 161 (D. Mass. 2007).......................................................................................5

*In re WRT Energy Sec. Lit.*
  246 F.R.D. 185 (S.D.N.Y. 2007)...........................................................................................13

*Jackson v. Harvard*
  900 F.2d 464 (1st Cir. 1990) ..............................................................................................4, 20

*King v. Illinois Central R.R.*
  337 F.3d 550 (5th Cir. 2003) ................................................................................................10

*MacSteel Inc. v. Eramet North Am.*
  2006 U.S. Dist. LEXIS 83338, at *3-*4 (E.D. Mi. 2006) ......................................................5

*Mayes v. Black & Decker*
  931 F.Supp. 80 (D.N.H. 1996) ..........................................................................................18, 19

*McGuire v. Acufex Microsurgical*
  175 F.R.D. 149 (D. Mass. 1997) .........................................................................................8, 9

*Morin v. Holmes Products*
 11 Mass. L. Rep. 412 (Worcester Super. Ct. 2000)..................................................18
*MOSAID Techs. v. Samsung Elecs.*
 348 F.Supp.2d 332 (D. N.J. 2004).............................................................................12
*Nation-Wide Check Corp. v. Forest Hills Distributors*
 692 F.2d 214 (1st Cir. 1982) (Breyer, J.) .................................................................10
*Northern Assurance Co. v. Ware*
 145 F.R.D. 281 (D. Me 1993)........................................................................16, 17, 18
*Parlin v. Cumberland County*
 2009 U.S. Dist. LEXIS 85117, at *5 (D. Me. September 16, 2009) ...........................5
*Phillips v. Netblue Inc.*
 2007 U.S. Dist. LEXIS 67404, at *4 (N.D. Cal, January 22, 2007)........................3, 5
*Quincy Mut. Ins. Co. v. W.C. Wood Co.*
 22 Mass. L.Rep. 541 (Middlesex Super. Ct. 2007) .....................................................5
*Residential Funding v. DeGeorge Financial*
 306 F.3d 99 (2d Cir. 2002) ..........................................................................................5
*Rev 973 LLC v. Mouren-Laurens*
 2009 U.S. Dist. LEXIS 12636, at *3 (C.D. Cal. February 2, 2009) ........3, 11, 13, 15
*Ryba v. LaLancette*
 417 F.Supp.2d 199 (D. Mass. 2006)............................................................................8
*Sacramona v. Bridgestone/Firestone*
 106 F.3d 444 (1st Cir. 1997) .........................................................................5, 12, 13, 16
*Scalera v. Electrograph Systems*
 2009 U.S. Dist. LEXIS 91572, at *35-*36 (E.D.N.Y. September 29, 2009) ..............8
*Schmid v. Milwaukee Elec. Tool*
 13 F.3d 76 (3d Cir. 1994) .............................................................................................4
*Toste v. Lewis Controls*
 1996 U.S. Dist. LEXIS 2359, (N.D. Cal. 1996) ..........................................................4
*Townsend v. American Insulated Panel Co.*
 174 F.R.D. 1 (D. Mass 1997)...............................................................................passim
*Travelers Property Casualty v. Pavilion Dry Cleaners*
 2005 U.S. Dist. LEXIS 16835, at *11 (D.N.J. 2005) ..................................................3
*Trull v. Volkswagen*
 187 F.3d 88 (1st Cir. 1999) ........................................................................................16
*United States v. $40,955.00*
 554 F.3d 752 (9th Cir. 2009) ......................................................................................10
*United States v. Wise*
 221 F.3d 140 (5th Cir. 2000) ........................................................................................6
*Zubulake v. UBS Warburg*
 220 F.R.D. 212 (S.D.N.Y. 2003)..................................................................................8

**Other Authorities**
7 Moore's Federal Practice § 37.120 (3d ed.) .................................................................10
Jamie S. Gorelick, Destruction of Evidence §§ 3.8-3.12 (1989).....................................8

## INTRODUCTION

Plaintiffs ICEM S.P.A. ("ICEM") and Aurora Assicurazioni S.P.A. ("Aurora") (collectively "Plaintiffs") submit this memorandum of law in opposition to the December 4, 2009 motion of Defendant Rachel Castricone ("Castricone") to strike the opinions of Plaintiffs' liability experts Ali Reza and Daren Slee on the grounds that Plaintiffs failed to preserve evidence (the "Spoliation Motion").[1] The Spoliation Motion misstates both the law and the facts in this matter. The critical point, which Castricone glosses over, is the absence of any evidence that Plaintiffs' breached a duty to preserve evidence they knew to be relevant. Unlike the cases Castricone relies upon, Plaintiffs did not remove or destroy evidence – the Italian authorities did. The Spoliation Motion focuses exclusively on the remedy, ignoring the fundamental requirement that the Plaintiffs spoliate some relevant evidence in the first place. Without proof that spoliation occurred, no exclusion of experts is proper. Nor would exclusion be appropriate under the circumstances of this case.

## BACKGROUND

The day of the fire, May 1, 2004, the Italian Public Prosecutor seized the Grand Hotel Parco dei Principi. Over the next three months portions of the Hotel were released back to ICEM in stages. Room 305, where the fire started, was not released to ICEM until July 22, 2004. During the period when ICEM had no access to Room 305, various Italian agencies, including the police and fire departments as well as the Public Prosecutor's panel of six independent experts visited the fire scene, conducted investigations and removed an unknown quantity of material. As part of the fire department investigation, for example, rubble and debris were dug

---

[1] No other Defendant joined Castricone's spoliation claim.

out of Room 305 as their photographs demonstrate.  When ICEM finally obtained access to

Room 305 on July 23, 2004, all remains of the fire, including debris, had been removed.

Defendant Castricone and co-defendant Tracey Bouldoukian ("Bouldoukian") were

questioned by the police on May 1, 2004.  By the end of that day, the Public Prosecutor brought

criminal charges against them.  Both immediately obtained legal counsel.  So did Defendant

Harvey Industries ("Harvey").  However, none of the Defendants requested to see the fire scene.

Nor did they avail themselves of the procedure under Italian law to seek a court order to secure

and investigate the fire scene.  Castricone, and the other Defendants, took no steps to learn what

had happened while Room 305 was in the Public Prosecutor's custody during the summer of

2004 or even during discovery in the present case.  What is clear is that Plaintiffs had no role in

the removal of items or material from Room 305 – that was done by the Italian authorities.[2]

## ARGUMENT

### I.

### DEFENDANT FAILED TO MEET HER BURDEN TO
### PROVE SPOLIATION OCCURRED

A leading case, not only in this District but nationwide, *Townsend v. American Insulated

Panel Co.*, 174 F.R.D. 1, 4 (D. Mass 1997) – which Castricone cites – defines spoliation as "the

intentional, negligent or malicious destruction of relevant evidence."  In language which

Castricone quotes[3] but fails to apply, *Townsend* states "[i]f it is determined that such <u>evidence

has been destroyed, **the next step**</u> is to decide the appropriate sanction to be imposed upon the

spoliator."  *Id.* (emphasis added).  The Castricone Memo devotes itself to the sanction element;

neglecting <u>the first step</u>, - proof that evidence was actually destroyed.  This Court, however,

---

[2] For a complete statement of the factual background see Plaintiffs' Response to Defendant Castricone's Concise
Statement Of Material Facts Not In Dispute, dated January 20, 2010 ("Plaintiff's Counterstatement of Facts").

[3] *See* Defendant Rachel Castricone's Memorandum in Support Of Her Motion To Strike The Opinions Of Plaintiffs'
Liability Experts, dated December 4, 2009 (the "Castricone Memo"), p. 8.

cannot reach the issue of sanctions unless and until Castricone has proven all the elements of

spoliation.

As another district court, which relied on *Townsend*, recently pointed out:

> Fundamentally, the court's decision whether to sanction a party for
> allegedly spoiling or destroying evidence depends on a finding that
> the party had a duty to preserve the evidence in question, which it
> breached. Only after answering this question in the affirmative,
> need the court determine what, if any, sanctions are appropriate.

*Phillips v. Netblue Inc.*, 2007 U.S. Dist. LEXIS 67404, at *4 (N.D. Cal, January 22, 2007)

(emphasis added). *See also Travelers Property Casualty v. Pavilion Dry Cleaners*, 2005 U.S.

Dist. LEXIS 16835, at *11 (D.N.J. 2005) ("Defendants' fault needs to be first established before

their degree of fault and any resultant prejudice may be determined. Here, Plaintiff failed to

establish that Defendants ever had possession or control of the sign, let alone responsibility for

its disappearance").

The party seeking sanctions for spoliation has the burden of proof. *See Gates Rubber Co.*

*v. Brando Chemical Indus.*, 167 F.R.D. 90, 108 (D. Colo. 1996) citing *Anderson v. Cryovac*, 862

F.2d 910, 923 (1st Cir. 1988); *see also Rev 973 LLC v. Mouren-Laurens*, 2009 U.S. Dist. LEXIS

12636, at *3 (C.D. Cal. February 2, 2009) ("The moving party has the burden of demonstrating

sanctionable conduct and prejudice"); *Akinyemi v. Napolitano*, 2009 U.S. App. LEXIS 18304, at

*4-*5 (2d Cir. August 17, 2009) (as movant offered no proof the evidence destroyed, trial court

properly denied sanctions). The level of proof necessary depends upon the type of sanction

sought. "In the First Circuit, the Court in *Anderson* found that in circumstances which would

warrant extreme sanctions, the movant must prove the opponent's misconduct by clear and

convincing evidence." *Gates Rubber Co.* 167 F.R.D., at 108 citing *Anderson*, 862 F.2d, at 923

(emphasis added). The court in *Gates Rubber Co.* emphasized that "orders of preclusion are

sanctions which deny a party's full right to a trial on the merits" (*id.*) and "operate in the same fashion as a default judgment," (*id.* at 106), which requires clear and convincing evidence. *Id.* at 109. *See also Jackson v. Harvard*, 900 F.2d 464, 469 (1st Cir. 1990) (preclusion is a "grave step[]"); *Schmid v. Milwaukee Elec. Tool*, 13 F.3d 76, 79 (3d Cir. 1994) (preclusion of plaintiff's expert deprives the party "of any opportunity to prove his case"). Thus, under the *Anderson* formulation, Castricone must prove <u>all</u> the elements of spoliation by clear and convincing evidence to obtain an order precluding plaintiffs' experts. *See Gates Rubber Co.*, 167 F.R.D., at 109 citing *Anderson* ("dispositive sanctions should only be granted where the moving-party persuades the judge to do so by evidence which is clear and convincing").

A.   **Castricone Failed to Prove Plaintiffs Destroyed Evidence**

The court in *Townsend* states: "[w]hile it is true that a litigant has a duty to preserve evidence, the duty does not extend to evidence which is not in the litigant's possession or custody <u>and</u> over which the litigant has no control." 174 F.R.D., at 5 (emphasis added). Therefore, "absent any evidence that the plaintiff was at fault for the loss or destruction of the [evidence] it would be inappropriate to apply the spoliation doctrine..." *Id. Townsend* relies on other prior federal decisions applying the same rule. *See id.*, at 4 quoting *Gordner v. Dynetics*, 862 F.Supp. 1303, 1307 (M.D. Pa. 1994) ("[t]here does not appear to be a basis for concluding that such a sanction [preclusion] would be appropriate when no conduct on the part of the plaintiff is the cause of the destruction..."); *see also, Townsend*, 174 F.R.D. 5 citing *Toste v. Lewis Controls*, 1996 U.S. Dist. LEXIS 2359, (N.D. Cal. 1996) (refusing to impose sanctions for evidence destroyed by plaintiff's employer: "defendant concedes that the plaintiff is blameless for the destruction of evidence but nonetheless argues that sanctions are appropriate against him...defendant cites no case in which a court actually imposed sanctions adverse to a blameless party"). *Townsend* concluded that spoliation was not applicable "for the simple reason that the

4

plaintiff did not destroy" the evidence, a third-party did.  *Id*, at 4.  This conclusion is consistent

with the recognition in *Sacramona v. Bridgestone/Firestone*, 106 F.3d 444, 446 (1st Cir. 1997)

that a court has the power "to exclude evidence that has been improperly altered or damaged <u>by a</u>

<u>party</u>..." (emphasis added).

     *Townsend* has been cited as an authoritative statement of the law both in this district and

other courts.  *Hofer v. The Gap*, 516 F.Supp.2d 161, 170-171 (D. Mass. 2007), citing *Townsend*,

refused to apply spoliation where the plaintiff did not destroy the allegedly defective sandal.

*MacSteel Inc. v. Eramet North Am.*, 2006 U.S. Dist. LEXIS 83338, at *3-*4 (E.D. Mi. 2006),

relying on *Townsend*, refused to sanction a party noting "MacSteel has not cited any case holding

that spoliation sanctions are appropriate where the evidence destroyed was in the custody or

control of a third party."  *See also Phillips*, 2007 U.S. Distr. LEXIS 67404, at *7 holding no duty

since "[o]ne cannot keep what one does not have"); *Quincy Mut. Ins. Co. v. W.C. Wood Co.*, 22

Mass. L.Rep. 541 (Middlesex Super. Ct. 2007) ("aware of no jurisdiction that has suppressed a

party's evidence or drawn an adverse inference against a party where neither that party nor

anyone acting on that party's behalf was the spoliator.")

     Other courts considering this issue reach the same conclusion.  For example, *Parlin v.*

*Cumberland County*, 2009 U.S. Dist. LEXIS 85117, at *5 (D. Me. September 16, 2009) denied

exclusion where the movant did not prove that the parties destroyed the evidence as "it would be

inequitable to sanction a blameless party for another's spoliation of evidence," quoting *Driggin*

*v. Am. Sec. Alarm*, 141 F.Supp.2d 113, 123 (D. Me. 2000).  *See also Residential Funding v.*

*DeGeorge Financial*, 306 F.3d 99, 107 (2d Cir. 2002) (focusing on "the party having control

over the evidence" at the time of destruction); *United States v. Wise*, 221 F.3d 140, 156 (5th Cir.

2000) (upholding denial of spoliation sanctions where "the government did not destroy Cain's computer; in fact, the computer was not even in the government's custody").

Missing from Castricone's argument is any real proof that Plaintiffs – not some third party, or the fire itself – destroyed alleged evidence. Such absence of proof is fatal to the spoliation claim. Castricone relies exclusively on her statement of facts. These are not evidence – nor are they undisputed.[4] The only actual evidence that Castricone relies upon are reports concerning seizure of some items by the police immediately after the fire (Castricone Memo, Ex. 27), and the wastebasket the police seized three days later. *Id.*, Ex. 28.[5] From this limited evidence, Castricone jumps to the incorrect conclusion the Italian authorities did not seize any other items. *Id.*, p.2. Without any evidence, Castricone then makes the further leap that Plaintiffs must have destroyed material, which she claims is now unavailable. This is both grossly inadequate to meet her burden of proof, and wrong on the facts.

First, Castricone has not shown that the evidence was destroyed or lost while in the custody and control of Plaintiffs. Castricone blurs the facts by claiming ICEM cleared the fire remnants between May 5, 2004 and August 23, 2004. Castricone Memo, 3. The very document she relies upon, however, the Studio Cincotti Report (Castricone Memo, Ex. 31, PL002942-PL002981, copy attached as Exhibit A for ease of reference) makes clear that the Hotel was seized by the Public Prosecutor the day of the fire and that portions of the Hotel subsequently

---

[4] *See* Plaintiffs' Counterstatement of Facts.

[5] Castricone also submitted an affidavit of an Italian attorney, Maria Pompole. This affidavit is so full of qualifications -"to the best of my knowledge," "from the minutes I could examine," "so far as I could take vision" "the items I could examine" - as to be useless as evidence. Pompole admits she did not even see half of what the Public Prosecutor's Office still held sometime after June 2009 (*see* Castricone Memo, Ex. 28). Pompole's affidavit discloses no knowledge of what occurred between May and July 2004 while Room 305 was in the custody of the Public Prosecutor. Pompole's affidavit becomes irrelevant in light of the attached Declaration of Alessandro Giorgetti.

were released in stages over the next three months. *See also* Declaration of Alessandro Giorgetti

dated January 18, 2009 ("Giorgetti Decl.") ¶¶ 3-4 (attached as Exhibit B).

Between May 21 and May 27, 2004, floors other than the 3rd Floor and portions of the 4th

Floor were released by court order. *See* Cincotti Report (PL002948); Giorgetti Decl.  ¶¶ 5-6).

On July 2, 2004, the court authorized clearance of waste material from the 3rd Floor "but the

operation was limited solely to brickwork structures that had been destroyed by the fire" and did

not include Room 305. Cincotti Report (PL002949); Giorgetti Decl. ¶ 7.  Room 305 was not

released until July 22, 2004. Cincotti Report (PL002950); Giorgetti Decl. ¶ 8.  Before then,

Plaintiffs had no access to Room 305. Giorgetti Decl. ¶ 9.  Castricone makes not effort to present

evidence concerning what happened on the 3rd Floor, and especially in Room 305, between May

5, 2004 and July 22, 2004 while the Public Prosecutor had exclusive custody (*id.*, ¶¶ 4, 10) - and

this Court is barred from speculating as to what happened.

Second, Castricone ignores evidence that much of the clearing of the fire scene and

removal of items from Room 305 was done by the Fire Department.  Notably lacking in

Castricone's motion is any report by the Fire Department.[6]  Photographs taken by the Fire

Department demonstrate that its personnel dug out the debris from Room 305 as part of their

investigation. *See* Attachment 7, Panel of Experts Report, dated November 15, 2004; *see also*

Giorgetti Decl. ¶¶ 10-11.  While material was removed, there is no record of what. *Id.*  Some of

the dug-out debris appears to have been deposited temporarily on the balcony. *Id.* ¶ 12.  When

ICEM finally obtained access to Room 305 on July 23, 2004, that debris was gone from the

balcony and nothing was left. *Id.* ¶¶ 13, 15.  Castricone refers to language in the Studio Cincotti

Report on the removal of furnishings and rubble from the 3rd floor after release to the Hotel.

---

[6] Castricone cannot supply that – or any other new evidence on rebuttal *See, e.g., Cia Petrolera Caribe v. Arco Caribbean*, 754 F.2d 404 (1st Cir. 1985).  She is limited to that presented with her initial motion.

Castricone Memo, p.3.  However, the actual Report entry summarized the "Clearance of rubble from the 5 destroyed rooms," together, not merely Room 305.  By July 23, 2004, there was no rubble in Room 305, having already been removed during the Fire Department and other investigations.  *Id.*, ¶¶ 10-15.

Castricone has presented no evidence, merely conjecture, that Plaintiffs destroyed any material.  The record demonstrates that fire and police departments cleared the fire scene and that any destruction occurred while the Public Prosecutor had custody of Room 305.  Castricone, therefore, cannot meet her burden of clear and convincing evidence that Plaintiffs spoliated evidence.

**B.**    **Plaintiffs Had No Duty To Preserve Evidence**

Not only has Castricone failed to meet her burden that Plaintiffs spoliated evidence, she failed to prove Plaintiffs had any duty to preserve evidence.  *Zubulake v. UBS Warburg*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("a party can only be sanctioned for destroying evidence if it had a duty to preserve it").  For a duty to preserve to arise either suit must be brought or at least filing a suit "is fairly perceived as imminent."  *McGuire v. Acufex Microsurgical*, 175 F.R.D. 149, 153 (D. Mass. 1997) citing Jamie S. Gorelick, <u>Destruction of Evidence</u> §§ 3.8-3.12 (1989). *See also Asher Assocs. v. Baker Hughes Oilfield Ops*, 2009 U.S. Dist. LEXIS 40136, at *16 (D. Col. May 12, 2009) (litigant's duty to preserve evidence arises when it knows or should know litigation is imminent or ongoing).  Thus in *Ryba v. LaLancette*, 417 F.Supp.2d 199, 204 n.8 (D. Mass. 2006) the court noted no spoliation was possible where the owner discarded the ladder before he became aware he might be the target of a lawsuit, *See also Scalera v. Electrograph Systems*, 2009 U.S. Dist. LEXIS 91572, at *35-*36 (E.D.N.Y. September 29, 2009) (no duty to preserve computer contents erased before notice of claim).

In this case, the Public Prosecutor brought criminal charges on May 1, 2004.  Under Italian law, he appointed an independent panel of experts to determine the cause of the fire. Collection and preservation of evidence was the responsibility of the Public Prosecutor and his experts. Giorgetti Decl. ¶ 23.  Along with criminal charges, that case included the civil claims of the deceased guests of the Hotel.  Plaintiffs had no intention to bring a U.S. lawsuit until late 2006, after reaching the settlement regarding the deceased guests on August 26, 2006 and holding discussions with Defendants in October.  *Id.*, ¶¶ 16-19. Certainly no U.S. lawsuit was imminent two years earlier at the end of July 2004.

Moreover, the fire scene was in Italy and Italian law imposed no duty on Plaintiffs to preserve evidence.  Not only did Plaintiffs have no duty under criminal law (*see id.*, ¶ 23), they had no duty under Italian civil law as well.  The basic Italian legal principle is that each party is responsible for securing evidence on which it has the burden of proof.  *Id.*, ¶ 24.  As a result, unlike situations in the United States where duty could possibly arise from possession, in Italy the duty is on the party that wishes to use the evidence.  Article 696 of the Italian Civil Procedure Code provides that a party may seek a court order to secure and inspect evidence, such as a fire scene, even if no civil case has commenced.  *See id.*, ¶ 25.  Even though Defendants were represented by counsel immediately after the fire, they took no steps to obtain an order under Article 696, either before or after Room 305 was released by the Public Prosecutor.  *Id.*, ¶ 28. Once the Public Prosecutor released Room 305, Plaintiffs had no duty to preserve debris (if any existed) under either Italian or American law.

Further any duty to preserve applies only to **relevant** evidence.  Spoliation concerns one "who is on notice that the documents and information in its possession are relevant to litigation or potential litigation ...." *McGuire*, 175 F.R.D. at 153 (emphasis added).  *See also Nation-Wide*

*Check Corp. v. Forest Hills Distributors*, 692 F.2d 214, 218 (1st Cir. 1982) (Breyer, J.) ("a party

who has notice that a document is relevant to litigation"). Even Castricone recognizes this. *See*

Castricone's Memo. p. 8 ("once it is established that <u>relevant evidence</u> has been destroyed")

(emphasis added).

As the court in *United States v. $40,955.00*, 554 F.3d 752, 758 (9th Cir. 2009) observed:

> Sanctions may issue only when a party had some notice the
> evidence was potentially relevant. A party does not engage in
> spoliation when, without notice of the evidence's potential
> relevance, it destroys the evidence … in the normal course of its
> business.

In *King v. Illinois Central R.R.*, 337 F.3d 550, 556 (5th Cir. 2003), after an accident, the

plaintiff's attorney made no claim the railroad signal malfunctioned or sought access to the

signal. Three years later, the attorney informed the railroad he intended to seek recovery based

on signal malfunction. The court denied the claim of spoliation because "at the time ICR

disposed of this potential evidence [the signal], it was unaware that it might be relevant…" *Id.*[7]

Castricone asserts Plaintiffs failed to preserve wiring and "other potential electrical

causes of the fire." Castricone Memo., p. 4.[8] She makes a passing gesture at relevance by

referring to "electrical problems in the Hotel." *Id.* However, those alleged problems are

identified in affidavits from 2009. Castricone ignores the fact that Plaintiffs had no knowledge

of those alleged problems in 2004 and did not learn of these claims until well after the litigation

was underway – years after the fire. *See* Giorgetti Decl. ¶ 26.

---

[7] 7 Moore's Federal Practice § 37.120 (3d ed.) states: "in determining whether to impose sanctions for spoliation of evidence, the court must determine whether the party had any obligation to preserve the evidence and whether the destroyed evidence would have been relevant to the contested issues."

[8] Elsewhere Castricone asserts (Castricone Memo, p. 7) that Plaintiffs had an "obligation to preserve <u>any and all material not seized</u> by the City of Rome…." (emphasis added) without identifying what this material was or how it could be relevant. It is clear the "key evidence," (*id.*) Castricone complains of is electrical debris.

In the summer of 2004, official reports indicated a discarded cigarette was the cause of the fire. The initial Fire Department Report (000195) (copy attached as Exhibit C) states there was no "hint of a possible electric fault to cause the fire." Castricone (and Defendants Bouldoukian and Harvey as well) was represented by counsel almost immediately after the fire. However, no mention of electric problems, or request to preserve electrical material was made by any of the Defendants after the fire or at any time during the months or years to follow. Thus, had electrical debris existed after July 22, 2004 – and Castricone has produced no evidence it did – Plaintiffs had no notice it was relevant, nor reason to know a lawsuit was possible, no less imminent. Even when the Panel of Experts Report came out in November (copy attached as Exhibit D for ease of reference), there was no indication electrical evidence was relevant. *See also* Giorgetti Decl. ¶ 27. In fact, that Report specifically excludes any electrical cause. *Id.* Castricone has failed to prove by clear and convincing evidence that after Room 305 was released, Plaintiffs had a duty to preserve material with knowledge of its relevance.

## II.
## CASTRICONE FAILED TO MEET HER
## BURDEN TO PROVE UNFAIR PREJUDICE

The party seeking sanctions for spoliation must prove by clear and convincing evidence not only the destruction of relevant evidence, but also prejudice as a result. *See Gates Rubber Co.*, 167 F.R.D. at 108 citing *Anderson*, 862 F.2d at 923-925; *see also Rev 973*, 2009 U.S. Dist. LEXIS 12636, at *3. As Castricone failed to meet her burden on the threshold issue whether Plaintiffs spoliated evidence, this Court need not reach the question of prejudice. As the Castricone Memo. spends inordinate space on this point, however, it is instructive to recognize that Castricone also failed to prove unfair prejudice.

**A.**   **No Prejudice Occurs When Parties Have A Level Playing Field**

The primary purpose of spoliation sanctions is "to rectify any prejudice the non-offending

party may have suffered as a result of the loss of evidence..." *Collazo-Santiago v. Toyota Motor*,

149 F.3d 23, 29 (1st Cir. 1998); *see also Sacramona*, 106 F.3d at 446 ("where necessary to

prevent the non-offending side from suffering unfair prejudice").  Castricone's allegations of

prejudice are very sketchy.  She claims prejudice because her (and other Defendants) experts did

not have an opportunity to examine possible electrical debris and the fire scene.  Castricone

Memo. 4, 7.  What Castricone fails to candidly disclose this Court, however, is that Plaintiffs

experts had no opportunity to examine the debris or the fire scene **either**.  Reza and Slee were

not even retained until years after Room 305 was completely restored.  Under Italian law and

practice, the analysis of the fire was conducted by the Public Prosecutor's panel of six

independent experts.  *See* Giorgetti Decl. ¶ 22.  Both Plaintiffs' and Defendants' experts have to

rely on that.  Since both sides have the exact same information, Plaintiffs' experts have no

advantage whatsoever.

Case law recognizes that a party is not prejudiced when both sides have a level playing

field.  The court in *Asher Assocs.*, 2009 U.S. Dist. LEXIS 40136, at *33-*35 (collecting cases),

concluded that no justification for sanctions existed where neither party's experts had an

opportunity to examine the destroyed evidence; noting "if spoliation sanctions are intended to

ameliorate prejudice, the court must acknowledge the extent to which parties currently enjoy a

level playing field." (emphasis added).  *See also MOSAID Techs. v. Samsung Elecs.*, 348

F.Supp.2d 332, 335 (D. N.J. 2004) ("spoliation sanctions serve a remedial function by leveling

the playing field or restoring the prejudiced party to the position it would have been without

spoliation"); *Centimark v. Pegnato & Pegnato Roofing*, 2008 U.S. Dist. LEXIS 37057, at *26

(W.D. Pa. 2008).  The court in *Asher* pointed out that "[i]n striving to 'level the playing field',

12

there must be some reasonable relationship between the sanction imposed and the prejudice actually suffered." 2009 U.S. Dist. LEXIS 40136, at *33. *See also In re WRT Energy Sec. Lit.*, 246 F.R.D. 185, 200 (S.D.N.Y. 2007) ("in the process of leveling the playing field, care must be taken not to tilt too far in favor of the party seeking sanctions").

Courts recognize that where the playing field is already level, where the experts on both sides have the same access to evidence – or lack thereof – the movant has failed to show it is sufficiently prejudiced. In *Bankston v. Wal-Mart*, 2008 U.S. Dist. LEXIS 11600 at *10-*11 (M.D. Ga. 2008) the subject rotor, wheel and two of four bolts (which had been in plaintiff's possession) were lost prior to litigation. The court denied the requested severe sanction among other reasons "as it appears that no expert for either party ever examined the missing physical evidence" and both sides were limited to photographs taken at the time. *See also Rev. 973*, 2008 U.S. Dist. LEXIS 12636, at *7 (denying preclusion of experts, noting "the lack of direct physical evidence … appears to prejudice everyone equally"). Here, as well, Plaintiff's experts had no opportunity to analyze any electrical debris or personally investigate the fire scene. Thus if there is prejudice, both sides suffer to the same degree.

**B.    No Prejudice Occurs When Moving Party Had Timely Prior Notice**

Castricone relies on a few cases that imposed sanctions based on very dissimilar factual circumstances. *See* Castricone Memo. 10-13. One glaring difference is that Castricone, and the other Defendants, had notice immediately of the fire and their potential liability. Castricone and Bouldoukian were questioned by the police within hours after the fire and advised the same day that they faced serious criminal charges, including manslaughter. Both of them obtained legal counsel, as did Harvey, which collected information related to claims on behalf of its guests. This situation is very different from cases cited by Castricone where the defendant did not even know of a possible claim until months or years later. *See* Castricone Memo. 13 (in *Sacramona*,

"manufacturers had not received notice of the claim until three years after the accident"); *Id.*, at

p. 10 (in *Northern Assurance* the manufacturer first received notice seven months after the fire

and four months after house was torn down).

Here, immediately after the fire, Castricone and the other Defendants were represented by

counsel, were aware their potential liability for the fire and had a special incentive to investigate

due to the criminal charges. However, they did nothing. They did not ask to view the fire scene,

either before or after Room 305 was released back to the Hotel. They did not ask to view the

evidence seized by the police and fire departments. They did not seek an Article 696 order to

secure and examine evidence. They did not raise any questions concerning the adequacy or

propriety of the fire investigation. Giorgetti Decl. ¶ 29. They simply left the investigation to the

Public Prosecutor's experts. The failure of the movant to take steps to collect or view the

evidence has been a consideration in denying spoliation sanctions. *See e.g. Townsend*, 177

F.R.D. at 5 ("it is readily apparent that [movant] did not try very hard to obtain an inspection

after the initial rebuff" and did not contact plaintiff's counsel nor identify the insurer "to

intervene to permit an inspection"); *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex*, 473 F.3d

450, 458 (2d Cir. 2007) ("we affirmed the district court's refusal to impose sanctions, in part,

because defendant had never asked to inspect the evidence at issue"); *Bankston*, 2008 U.S. Dist.

LEXIS 11600, at *13 ("There is no evidence that Defendant ever requested the preservation of

the physical evidence").

Not only did the Defendants and their attorneys do nothing after the fire or at any time

during the summer of 2004, they did nothing to attempt to discover what evidence was available

even after this lawsuit began. Although almost 50 depositions were taken in discovery, neither

Castricone nor the other Defendants sought to question the members of Panel of Experts, the

Public Prosecutor's office, the custodian of evidence, or any of the fire and police officers who investigated the scene. Nor did they question Plaintiffs' 30(b)(6) witness regarding the condition of Room 305 when released on July 23, 2004. Other courts have noted that the availability of evidence from other sources is a factor lessening prejudice. *See e.g. Collazo-Santiago*, 149 F.3d at 29 ("evidence as to many of these issues could also have been obtained through other means"); *Rev. 973*, 2009 U.S. Dist. LEXIS 12636, at *7 ("movants have not demonstrated prejudice" where they might be able to obtain evidence from third-party but never tried). Defendants' failure, both in 2004 and since, to pursue other sources of evidence weighs heavily against awarding sanctions.

**C.    No Prejudice Occurs When Alleged Spoliator Had No Independent Access To The Evidence**

Another critical difference from Castricone's cases is that in each the accused spoliator had access to the evidence before it was destroyed. Castricone herself points this out with regard to *Headley v. Chrysler*, 141 F.R.D. 362 (D. Mass. 1991), noting "plaintiffs failed to preserve the accident vehicle following inspection by one of his two expert witnesses." Castricone Memo. 12. Actually the facts were much more telling in *Headley*. One or two days after the accident, the plaintiff's wife and sister viewed and photographed the vehicle. On the plaintiff's release from the hospital, he went with his wife and inspected the car, moving the seat back and forth. The plaintiff's attorney wrote to the custodian requesting to keep the car available for inspection since they were "looking into a possibility of a claim on the auto manufacturer" caused by the seat. Then attorney retained an expert who inspected the vehicle, did tests and removed the seat

and bolts. Once that inspection was complete, the plaintiff allowed the vehicle to be destroyed, without ever notifying the manufacturer.[9]

In *Sacramona*, 106 F.3d at 446, as Castricone points out, "the plaintiff's experts had materially altered the subject wheel during their examination and cleaning of it, before the defendant manufacturers were given the opportunity to examine it." Castricone Memo. 13. Again the court excluded evidence where the spoliator had gained an advantage during its examination of the evidence. *See also Trull v. Volkswagen*, 187 F.3d 88, 95 (1st Cir. 1999) (excluding evidence of plaintiff's post-accident investigation of a vehicle subsequently destroyed before the manufacturer could inspect).

Castricone extensively discusses *Northern Assurance Co. v. Ware*, 145 F.R.D. 281 (D. Me 1993), a district court opinion from another jurisdiction. As with the other cases she cites, however, the facts in *Northern Assurance* are very different. There, after a house fire, the State Fire Marshal investigated and determined that the "only possible ignition source which was found in the area of origin was an electrical cable." *Id.*, 281. Shortly thereafter, plaintiff's expert separately investigated the scene. Based on his observation of the electrical wire at the scene, plaintiff's expert's rejected the Fire Marshal's opinion regarding electrical origin. Instead, plaintiff's expert decided that a faulty stove pipe caused the fire. The expert removed the stove pipe but left the wires. Although the expert made notes, he later destroyed them. The insurance adjustor advised the owners to leave the house as is, but they removed the remains months before the defendant manufacturer was notified of a possible claim. *Id.*, 282. In excluding the expert's testimony, the court emphasized the fact that well before the house was demolished, "a plausible line of defense suggested by the State Fire Marshal is that an electrical problem rather than

---

[9] The *Headley* court's dismissal of the plaintiff's prejudice to both argument, based on his second expert (retained after the vehicle was destroyed) not having an opportunity to view or test the vehicle (*see* Castricone Memo. 12), is really superfluous. There certainly was no level playing field given Plaintiff's access and initial investigation.

Defendants' metal chimney or installation of the chimney caused the fire" and that "Plaintiff must have known of the conflicting theories of causation in respect to the fire set forth in [the expert's] and the Fire Marshal's reports ..." Id., 283. Further the court pointed out that the expert selectively preserved items "which support plaintiff's theory of liability" while impeding the presentation of the other theory. *Id.*, 284. The court concluded that plaintiff acted "unfairly." *Id.* (emphasis added).

On every important point, the facts in *Northern Assurance* depart markedly from the present case. Here, ICEM and Aurora did not do an independent investigation of the fire scene. Both sides must rely upon the Panel of Experts[10] (the equivalent of the State Fire Marshal's investigation. Plaintiff's experts here had no independent opportunity to examine the fire scene. Rather than a report that identified a likely electrical cause, here the Panel of Experts' Report, as well as the initial Fire Department investigation of the scene, excludes any electrical cause. ICEM also did not selectively preserve some evidence. By the time Room 305 was released, three months after the fire, nothing remained to be preserved.[11] Unlike the plaintiff in *Northern Assurance*, ICEM had no reason to know of Castricone's competing theory of the fire's cause (which the Panel of Expert's Report rejected). Clearly ICEM did not act "unfairly" in restoring a vacant Room 305 so that the Hotel could reopen, where the government had removed the evidence and any debris was gone.

*Northern Assurance* turns upon the unfair advantage gained by the plaintiff's expert and his affirmative acts prejudicing the other side. *Northern Assurance* does not prescribe a blanket

---

[10] In fact, Castricone's Italian expert did so in her criminal case without attacking the investigation.

[11] The involvement of Aurora prior to the release of Room 305 has no bearing on this case. First, ICEM had no control over the fire scene so its insurer could not direct or advise ICEM to preserve evidence. Second, Aurora and ICEM are Italian entities subject to Italian law and practices. Aurora's presence is no indication that civil litigation was foreseen. In fact, Aurora never intended to bring a lawsuit until well after the settlement two years later.

rule that when a defense expert cannot investigate a fire scene, the plaintiff is barred from using a fire expert. Such a reading of *Northern Assurance* was specifically rejected by another district court in this Circuit three years later. *Mayes v. Black & Decker*, 931 F.Supp. 80 (D.N.H. 1996), dealt with a house fire where the town fire inspector determined that the fire originated on the kitchen countertop. The investigator seized certain electrical appliances, including a coffeemaker, but not the light fixture or dishwasher. No investigation by the owner or its insurer took place. Instead, the owner's expert relied upon the fire inspector's report. The house was later demolished. The manufacturer of the coffeemaker moved to exclude plaintiff's expert opinion that its product caused the fire. The court noted that *Northern Assurance* was "factually inapposite" because there the insurance expert and fire marshal "each identified different causes of the fire but the insurance company retained only the evidence pertaining to its own source theory." *Id.*, at 84 n. 7. The court in *Mayes* pointed out:

> defendant's chief complaint is not that it is unable to inspect the plaintiff's principal piece of evidence but rather that plaintiff's destruction of the scene and other appliances has deprived it of an opportunity to posit other ignition sources.

*Id.*, at 84. The court rejected this rationale holding that the preservation of the coffeemaker "permits defendant to mount an able challenge to plaintiff's main trial theory ... preclusion under these circumstances would thus constitute reversible error." *Id.*

Similarly, in *Morin v. Holmes Products*, 11 Mass. L. Rep. 412 (Worcester Super. Ct. 2000), a home fire investigated by local authorities, the court denied exclusion for failure to preserve "other potential causes of the fire," which were not the focus of plaintiff's claim. The court concluded "other suspected causes of the fire would have been factors for the defendants to evaluate, but they are not critical to their defense. Their absence does not prevent defendants

from arguing "plaintiff's cause is wrong." *Id.*, *11. *See also Corales v. Sea-Land*, 172 F.R.D.

10, 14 (D.P.R. 1997).

As in *Mayes*, Castricone complains that possible electrical debris is not available to use to

posit <u>another</u> cause of the fire.  The alleged absence of such material does not prevent Castricone

from challenging the cigarette cause relied on by Plaintiffs.  In these circumstances, the inability

of both sides to investigate the original fire scene independently is not prejudice.

**D.     No Prejudice Occurs Where Electrical Cause Can Be Excluded**
        **Based on Existing Evidence**

Castricone's prejudice argument really comes down to its expert (and those of other

Defendants) saying they do not know how the fire started.  This lack of opinion is no proof of

prejudice, no less clear and convincing evidence.  The Panel of Experts, which did have access to

the scene and the evidence, was able to conclusively reject an electrical cause of the fire.

Further, Plaintiffs experts – who did not have any more access or information than Defendants' –

were able to exclude electrical cause as well.  The Exponent Rebuttal Report dated August 2009

(copy attached as Exhibit E for ease of reference) states (p. 7), "based on an independent analysis

in which we considered only the information that was available to us, we have concluded that

electrical fault can be ruled out as a probable cause."  The Rebuttal Report then goes on to

discuss and exclude each of the major electrical causes:  wiring, room appliances and outlets.

*Id.*, 8-13.  Plaintiffs' experts conclude ruling out these sources can be done based solely on the

information available. They note that if the Panel of Experts Report is considered <u>in addition to</u>

such information, electrical cause can be conclusively ruled out.  *Id.*, 7.  Notably, Castricone's

Italian experts in the criminal case relied upon the Panel of Experts Report.  Rather than

contending that determining the cause was impossible, they used the Report to attack its

conclusions.  Castricone is free to do the same here.

This Court does not need to accept Plaintiffs' experts' opinion that the fire could not have had an electrical cause to resolve this Spoliation Motion. The issue now is <u>not</u> the actual cause of the fire. Rather the question is prejudice to the movant. Since Plaintiffs' experts' demonstrated one could analyze and reach a conclusion regarding electrical cause, based on solely the existing information, Castricone cannot meet her burden to prove prejudice by clear and convincing evidence.

The assertion by Castricone's expert (and the other Defendants') of an inability to determine if electrical failure caused the fire appears more a concession that they cannot disprove the real cause of the fire, a cigarette discarded in Room 305. Rather than confront the existing evidence demonstrating that cause, they hope to distract this Court by claiming they cannot disprove something else instead. Since a competent fire expert could resolve the issue of an electrical cause with the evidence presently available, Castricone cannot be prejudiced by other possible evidence that is allegedly unavailable.

Certainly in these circumstances, the severe sanction of exclusion of any opportunity to prove Plaintiffs' case is not appropriate. The Supreme Court has recognized "[b]ecause of their very potency, inherent powers [to sanction] must be exercised with restraint." *Chambers v. Nasco*, 501 U.S. 32, 44 (1991). The First Circuit has cautioned that "the sanction needed to be one appropriate to the truth-finding process, not one that…served only further to suppress evidence." *Jackson*, 900 F.2d at 469. Castricone's spoliation motion is nothing less than an attempt to suppress the truth about the cause of this fire.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that Defendant Castricone's motion to strike the opinions of Plaintiffs' liability experts be denied.

Respectfully submitted,
PLAINTIFFS,
ICEM S.P.A.,
AURORA ASSICURAZIONI S.P.A,
By their attorneys,

/s/   John Tener
John E. Tener, BBO # 563791
Alexander D. Pencu (admitted *pro hac vice*)
ROBINSON & COLE LLP
One Boston Place, 25th Floor
Boston, MA 02108-4404
Phone:  (617) 557-5900
Fax:  (617) 557-5999
jtener@rc.com
apencu@rc.com

DATED: January 20, 2010

## Certificate of Service

I, John Tener, hereby certify that on this 20th day of January, 2010, this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants

/s/   John Tener
John Tener