# Exhibit FF
# to the Pencu Affidavit



*Failure Analysis Associates*

**Privileged and Confidential: Prepared at the Request of Counsel**

**Engineering Investigation of the Parco dei Principi Hotel Fire**

**Supplemental Report**



**Privileged and Confidential: Prepared at the Request of Counsel**

# Engineering Investigation of the Parco dei Principi Hotel Fire

# Supplemental Report

Prepared for

John E. Tener, Esq.
Robinson & Cole, LLP

Prepared by

Ali Reza, P.E.
Daren Slee, B.S.E.E., P.E., CRE
Exponent Failure Analysis Associates, Inc.
5401 McConnell Ave
Los Angeles, CA 90066

September 30, 2009

© Exponent, Inc.

Doc. no.  LA32609.000 A0T0 0909 AR03

**Privileged and Confidential:  Prepared at the Request of Counsel**

# Contents

|  | Page |
|---|---|
| **List of Figures** | iii |
| **Supplemental Opinions** | 1 |

Appendix A   Line of sight analysis
Appendix B   Footnotes, Exponent May 2009 report and August 2009 rebuttal report
Appendix C   List of materials reviewed and relied upon



**Privileged and Confidential: Prepared at the Request of Counsel**

## List of Figures

| | | Page |
|---|---|---|
| Figure 1. | Model of the pelmet and valance in room 305. | 3 |
| Figure 2. | Radiative heat flux onto the bed area with a curtain heat release rate of 200 kW/m$^2$. | 4 |
| Figure 3. | Temperature at 90 cm above the floor in the middle of the bed with a curtain heat release rate of 200 kW/m$^2$. | 5 |
| Figure 4. | AutoCAD drawings from hotel and Exponent measurements used to build 3D model. | A-1 |
| Figure 5. | Identification of potential areas in the line of sight of camera 9. | A-2 |
| Figure 6. | Construction of 3D model to identify areas in the line of sight of camera 9. | A-3 |
| Figure 7. | Room furniture dimensions and locations from Exponent measurements. | A-4 |
| Figure 8. | Measurements taken by Parco dei Principi hotel employees. | A-5 |
| Figure 9. | Bed. | A-6 |
| Figure 10. | Television stand/refrigerator. | A-7 |
| Figure 11. | Desk. | A-8 |
| Figure 12. | Chair (location approximate). | A-9 |
| Figure 13. | Television. | A-10 |
| Figure 14. | Camera locations: new vs. old. | A-11 |
| Figure 15. | Extrapolation of original camera 9 location with respect to west wall and ceiling. | A-12 |
| Figure 16. | Distance of camera 9 plane from north wall (measured). | A-13 |
| Figure 17. | Distance of camera 9 to west wall and ceiling. | A-14 |
| Figure 18. | Areas visible to camera 9 through the two doors of room 305. | A-15 |
| Figure 19. | Boundaries: planes tangent to outer door and inner door frame. | A-16 |
| Figure 20. | Areas of the room within the line of sight of camera 9. | A-17 |
| Figure 21. | Furniture within the line of sight. | A-18 |
| Figure 22. | Perspective view of line of sight. | A-19 |
| Figure 23. | View from camera 9 location. | A-20 |

**Privileged and Confidential: Prepared at the Request of Counsel**

Figure 24.   Within camera 9 line of sight. — A-21

Figure 25.   Zooming in on view from camera 9. — A-22

Figure 26.   Door frame before fire (camera 9 raw footage, 4:55:21 corrected time). — A-23

Figure 27.   Door frame during fire (camera 9 raw footage, 5:18:10 corrected time). — A-24

Figure 28.   Camera 9 pointing at bottom of 3rd elevator door (image center). — A-25

Figure 29.   Inclusion of camera 9 frame into 3D model. — A-26

Figure 30.   Camera 9 footage projected onto door frame. — A-27

Figure 31.   Zooming in on flame. — A-28

Figure 32.   Contour of bright area of flame. — A-29

Figure 33.   Line of sight from camera to flame contour. — A-30

Figure 34.   Top view of line of sight for flame contour. — A-31

Figure 35.   Line of sight for flame contour through room 305. — A-32

Figure 36.   Line of sight intersects curtain drawn open to edge of sliding door frame. — A-33

Figure 37.   Top view of line of sight (view is partially obstructed by solid objects). — A-34

Figure 38.   Line of sight intersecting obstructions. — A-35

Figure 39.   Sensitivity analysis. — A-36

Figure 40.   View from camera 9 location aligning view with image center. — A-37

Figure 41.   Alternate camera 9 location 1: No significant change in line of sight. — A-38

Figure 42.   Alternate camera 9 location 2: No significant change in line of sight. — A-39

Figure 43.   Alternate camera 9 location 3: No significant change in line of sight. — A-40

Figure 44.   Alternate camera 9 location 4: No significant change in line of sight. — A-41



**Privileged and Confidential:  Prepared at the Request of Counsel**

# Supplemental Opinions

Subsequent to Exponent's August 2009 rebuttal report on the above referenced matter,[1] Robinson & Cole, LLP, has requested that Exponent prepare a supplemental report to further document our analysis.  Exponent reiterates the opinions presented in our original and rebuttal reports and offers the following additional supporting information.

The electrical distribution system in room 305 included a card reader that controlled the power to the lights and other room equipment.  Ms. Castricone, Mr. Jarnryd, and Mr. Pitre have described this device and how it operated in their respective rooms.[2]  They indicated that the card must be placed in the card reader to provide power to lights in the room.  Exponent considered this information during our analysis of potential fire causes and requested Mr. Vaccaroni and employees of the Parco dei Principi to confirm what electrical equipment was connected to the card reader such that it would become de-energized when the card was removed.  We were informed that, at the time of the fire, if the card was removed from the reader, there was no electrical power to any lights or wall receptacles.  Exponent is in the process of determining whether the refrigerator and the television remained energized.

Our rebuttal report included a line of sight analysis to address defense experts' assertions that the light seen inside room 305 in the video was something other than fire.[3]  While we provided the results of our analysis in our rebuttal report, the complete analysis is included for reference in Appendix A.  To reiterate, our line of sight analysis has confirmed that the light seen in room 305 is fire and is not a consequence of light reflections or external lights from the balcony window.  Further, the line of sight analysis has established what could and could not be seen by the security camera and that the position of the fire is consistent with burning curtains within a few feet from floor level just east of the refrigerator and desk.

---

1   Exponent expert report, "Engineering Investigation of the Parco dei Principi Hotel Fire – Rebuttal report," August, 2009.
2   Videotaped deposition of Rachel Castricone, February 18, 2009, p. 61; deposition of Erik Jarnyrd, February 26, 2009, pp. 22-23; deposition of Michael Pitre, March 16, 2009, p. 148.
3   Figure 32, Exponent expert report, "Engineering Investigation of the Parco dei Principi Hotel Fire", May 2009.

**Privileged and Confidential: Prepared at the Request of Counsel**

Exponent reviewed the expert report produced by Mr. Tekorius relating to the FDS simulations. He noted the presence of a decorative curtain and pelmet above the sliding glass door that was not included in our original FDS simulations. Exponent has performed two additional simulations that include a pinewood pelmet with a decorative curtain affixed to it (Figure 1). One simulation utilizes the heat release rate of the curtain (200 kW/m$^2$) and wastebasket (100 kW) from case 4 in Exponent's original report.[4] The second simulation reduces the wastebasket heat release rate to 50kW. The size and shape of the curtain and pelmet are based on hotel photographs and discussion with hotel personnel. The pelmet is 1 cm thick, 50 cm in height, and offset 20 cm from the ceiling. It spans 310 cm (the width of the room) and extends 20 cm from the wall. The decorative curtain is 2 mm thick and has the same material properties as the curtains in our previous simulations.

The results of the simulations are shown in Figure 2 and Figure 3. A direct comparison is made with case 4 in our original report. The results show that including the pelmet diminishes the room survivability time by approximately 30 seconds. We note that this simulation provides a lower bound estimate for the time the room remained survivable because we have assumed that the wastebasket represented a significant fuel load. In any event, the simulation confirms that, after the onset of flaming combustion, the room would have remained survivable before Ms. Castricone and Ms. Bouldoukian exited the room. Modeling the pelmet and reducing the initial heat release rate from the wastebasket provides a time estimate that is very similar to case 4 in our original report. The time required for the smoke plume to trigger the smoke detector in front of the elevator remains approximately the same as case 4 in our original report.[5]

---

[4] Table 4, Exponent expert report, "Engineering Investigation of the Parco dei Principi Hotel Fire," May 2009.

[5] Elevator smoke detector activation (1%/ft) time of 77 s for case 4 compared to 72 s and 87 s for wastebasket heat release rates of 100 kW and 50 kW, respectively.

**Privileged and Confidential:  Prepared at the Request of Counsel**



Figure 1.    Model of the pelmet and valance in room 305.

For completeness, a list of the footnotes referenced in Exponent's report and rebuttal report are provided in Appendix B.  A comprehensive list of materials reviewed by Exponent is provided in Appendix C.

Ali Reza, P.E.
Corporate Vice President
and Principal Engineer

Daren Slee, B.S.E.E., P.E., CRE
Senior Managing Engineer



Figure 2.   Radiative heat flux onto the bed area with a curtain heat release rate of 200 kW/m².



Figure 3.  Temperature at 90 cm above the floor in the middle of the bed with a curtain heat release rate of 200 kW/m$^2$.

